(112 So. 99)

## TRAVELERS' INS. CO. v. WILLIAMS.
### (1 Div. 653.)

(Court of Appeals of Alabama. Nov. 9, 1926.

Rehearing Denied Dec. 7, 1926.)

8

Harry T. Smith & Caffey and Thornton & Frazer, all of Mobile, for appellee.

BRICKEN, P. J. On the 10th day of February, 1901, the Travelers' Insurance Company issued a policy on the life of John H. Williams. This policy was issued in consideration of annual premiums of $32.32, to be paid on or before the 10th day of February in each year during the continuance of the policy, and obligated the company to pay to the beneficiary named therein $1,000 upon acceptance of satisfactory proof of the death of the insured during the. continuance of this policy.

On August 3, 1909, the insured and his beneficiary borrowed $80 on the policy. Interest on this loan was to run from August 10th, and the loan itself was payable on February 10, 1910. Out of the sum so borrowed, the premium on the policy was paid up to the maturity of the loan. On February 10, 1910, the policy had a cash surrender value of $131 or automatic extended insurance for a period of 7 years and 8 months; the extended insurance expiring on October 11, 1917.

Smiths, Young & Johnston, of Mobile, for appellant.

When the loan of $80 on August 3, 1909, was made, the policy was delivered to the insurance company under a written agreement, which is set out in the report of the case. It is sufficient here to say that the instrument recites the agreement on the part of the insurance company of a loan to the insured, and an intention, on his part to secure the repayment of said loan by pledging and delivering to the insurance company the policy of insurance. Paragraph 5 of the agreement is as follows:

"In event of default in the payment of principal or interest, or of any premium on said policy, for one month after they shall respectively become payable, the company, which is hereby irrevocably appointed attorney for that purpose, is hereby authorized to cancel said

policy for its cash surrender value, as determined by the company's tables, and the company in that case shall be liable to the party of the second part for the balance only of said cash surrender value, after deducting therefrom said loan, with interest thereon to the date of cancellation, and any unpaid premiums."

No further payment was made on the policy after August 3, 1909, and, acting under what it conceived to be its authority under paragraph 5 of the loan agreement, the insurance company canceled the insurance policy on April 20, 1910, and extinguished the loan by applying $80 of the $121 cash value of the policy to the loan indebtedness, and retained $51, subject to the orders of the insured. This latter sum, it is alleged, the defendant heretofore endeavored to pay to the plaintiff, which amount, together with the cost accrued to date, it herewith brings into court and tenders to the plaintiff in settlement of its liability under said policy.

The evidence tends to show that the insured went to Florida in the fall of 1909 to work on a railroad under construction; that he came back just before Christmas, and shortly returned to Florida, from whence he sent money, clothes, and some other articles to his children. The evidence tends to show that the insured enjoyed congenial domestic life; that he continued to send money and clothing to his children after he left for Florida, and that he remained in Florida about two years following; that during the years he was in Florida his wife, the plaintiff in this case, heard from him regularly, and that the plaintiff testified that the last time she heard from him "has been about between 10 and 12 years ago. I could not say just when, but to my knowledge it has been somewhere about 10 or 12 years." The trial of this case took place on the 1st day of June, 1925, and we interpret the testimony of the plaintiff to mean she had not heard from her husband, the insured, for about 10 or 12 years prior to the trial date.

The primary question of importance in this case is whether or not the liability of the insurance company on the policy was limited to $51 and costs by reason of the loan agreement and facts above referred to. The contention of the appellee is that the presumption of death, arising from an unexplained absence of 7 years, in connection with the other facts and circumstances briefly referred to, authorized the jury to infer and find that the deceased met his death some time prior to the expiration of the automatic insurance period which terminated on October 10, 1917, and that the loan agreement above referred to does not assign or transfer the policy to secure the loan, and for that reason the company was required to acquire title to the property by foreclosure of the pledge, as pledges are ordinarily foreclosed, and could not provide by agreement for cancellation of the policy for nonpayment of the principal or interest on the loan. The appellee relies upon the case of Travelers' Insurance Co. v. Lazenby, 16 Ala. App. 549, 80 So. 25. The appellant contends that the case is ruled by Penn Mutual Life Ins. Co. v. Bancroft, 207 Ala. 617, 93 So. 566, 28 A. L. R. 1102, and other authorities to the same effect.

After a careful consideration of the respective propositions, it is our opinion that the Bancroft Case is decisive of the question involved. In the Lazenby Case it was held that the policy was a pledge, and, as such, the title remained in the pledgor, with the right in the pledgee to sell in case of default, but not to confiscate, and this court held that under such circumstances a sale was necessary, because by default of payment or redemption the pledge does not become the property of the pledgee, and that he has only a lien upon it. And it was further ruled that the insured did not acquire the legal title to the property by the loan contract, nor by deed, as stipulated in the contract, nor by foreclosure by due process of law; hence the defendant could not cancel the policy, and the stipulation in paragraph (b) in the contract could not be enforced as a penalty.

In the case at bar, paragraph 5, supra, specifically provides that, in the event of default in the payment of the principal or interest or any premium on said policy for one month after they shall have respectively become payable, the company, which is hereby irrevocably appointed attorney for that purpose, is hereby authorized to cancel said policy for its cash surrender value, as determined by the company's tables, and the company in that case shall be liable to the party of the second part for the balance only of said cash surrender value, after deducting therefrom said loan, with interest thereon to the date of cancellation, and any unpaid premiums. This agreement was executed by the insured and the beneficiary, and, as was said by the Supreme Court in the Bancroft Case, the procedure outlined in paragraph 5 "was but a method for * * * the foreclosure of the pledge—a practical method of bringing the transaction to a final determination. Such agreements have been sanctioned by numerous authorities."

The rulings of the court below were not in harmony with the view herein expressed, and for that reason the judgment appealed from must be reversed and the cause remanded to the court below for proceedings not inconsistent with this opinion. A number of other propositions are ably discussed in the briefs of counsel, but they are collateral to the main proposition involved, and, under the view we have taken of the case, it is unnecessary to treat them.

Reversed and remanded.

## On Rehearing.

BRICKEN, P. J. In the application for rehearing, appellee renews her insistence that

the insurance company failed to meet the burden of proving nonpayment of the loan, which was a condition precedent to the right of cancellation, and that the loan agreement referred to in the original opinion was void as to the wife as being a pledge of her interest in the insurance policy to secure a loan to her husband. Code 1923, § 8272.

While we have considered all of the alleged infirmities in the evidence offered by the insurance company on the issue of nonpayment of the loan, so ably pointed out by counsel for appellee, we are still of the opinion that the facts and circumstances shown by the record disclose, when considered fairly, that the loan was not repaid.

Counsel cite no authority, and we know of none, holding the loan agreement above referred to void as to the wife of the insured, in so far as the right of the insurance company to bring the matter to a final determination is concerned.

The application for rehearing is overruled.